UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00162-GNS-HBB

LUTHER POYNTER, by and through
his Guardian, ANITA FERNANDEZ                                          PLAINTIFF

v.

AARON BENNETT et al.                                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 95) and Defendants' Motions to Exclude (DN 98, 99). The motions are ripe for adjudication.

## I.    BACKGROUND

On December 25, 2020, Luther Poynter ("Poynter") was booked into the Barren County Detention Center ("BCDC") by Lieutenant Jacob Burris ("Burris") for a minor criminal matter, as reflected by the facility admission report ("FAR"). (Bennett Dep. 37:15-20, Apr. 19, 2023, DN 95-3; Defs.' Mot. Summ. J. Ex. A, at 1, DN 95-2). During the initial intake process, Poynter was asked "a series of general questions, personal questions, and medical questions" through its jail maintenance system called JailTracker, and as the booking officer, Burris was responsible for classifying Poynter based on gender, mental or physical health issues, suicidal tendencies, the seriousness of his offense, behavioral history, any special needs, and criminal history.[1] (Bennett

---

[1] In addition to the BCDC intake process, the Kentucky Department of Corrections ("KDOC") has its own classification system applicable to state inmates housed at the BCDC, but the KDOC is responsible for conducting its own classification of those inmates. (Bennett Dep. 27:6-28:1; Boston Dep. 29:1-13, Nov. 29, 2023, DN 95-5).

Dep. 20:9-13, 22:11-24:7, 56:14-57:16; Boston Dep. 24:16-19; Defs.' Mot. Summ. J. Ex. C, at 1, DN 95-4).

Each inmate is allowed to put other inmates on a "keep-away" list with the jail; the lists indicate which inmates should not be together and are effective indefinitely. (Bennett Dep. 74:25-76:5, 80:5-20; Boston Dep. 32:16-33:2). These lists can be found in JailTracker and are reviewed during the intake process. (Bennett Dep. 81:8-15; Boston Dep. 31:11-21, 32:16-33:2). During booking, Poynter did not identify any inmate from whom he needed protection. (Defs.' Mot. Summ. J. Ex. C, at 1).

While being housed at the jail, inmates may be reclassified as frequently as necessary. (Bennett Dep. 25:19-26:15, 122:18-123:23). Jail staff evaluate incidents at the jail and determine whether there is a pattern of activity warranting separation of specific inmates from each other. (Bennett Dep. 78:25-80:4). If an inmate has a tendency to harm other inmates, that inmate is be placed in a cell by him- or herself (i.e., medium to maximum security). (Bennett Dep. 117:18-119:1, 134:23-135:5). The determination of an inmate's tendency may be based on the inmate's prior stay at the jail or on a specific incident while housed at the BCDC. (Bennett Dep. 135:7-136:23). The general population at the BCDC is classified as minimum security. (Bennett Dep. 119:2-3).

After initially being housed in an isolation cell for 48 hours and being asymptomatic for COVID-19, the supervisor on shift, Lieutenant Alex Hawkins ("Hawkins"), decided to move Poynter to Cell 524 in the early morning hours of December 28, 2020.[2] (Bennett Dep. 94:7-17, 99:15-100:7; Defs.' Mot. Summ. J. Ex. F, at 1, DN 95-6). Within the first 20 seconds, Poynter

---

[2] Like all general population cells, this cell has ten beds. (Bennett Dep. 110:25-111:5). No inmates in that cell were kept separate from Poynter, and all beds were occupied at the time. (Bennett Dep. 101:11-13, 111:7-8).

was in the cell, he put his belongings on the ground and walked across the cell to Scotty Wix ("Wix").[3]  (Defs' Mot. Summ. J. Ex. E, at 0:00-0:21, DN 96; Defs.' Mot. Summ. J. Ex. F, at 1).  Poynter then appeared to engage in a conversation with Wix.  (Defs.' Mot. Summ. J. Ex. E, at 0:21-1:19).  The exact nature of the conversation between Poynter and Wix is unknown, and Poynter does not recall the conversation.  (Bennett Dep. 105:24-106:2; Poynter Dep. 6:6-8, 11:19-24, Jan. 18, 2023, DN 100-1).  Within roughly one minute, Poynter was attacked by Wix and Timothy Guess ("Guess"), another inmate in the cell.  (Defs.' Mot. Summ. J. Ex. E, at 1:19-1:25, DN 96; Def.'s Mot. Summ. J. Ex. F, at 1-2, 4-5).  The attack lasted approximately six seconds.  (Defs.' Mot. Summ. J. Ex. E, at 1:19-1:25).  Eleven seconds after the attack ended, BCDC staff entered the cell to restrain Wix and provided aid to Poynter until he was removed from the cell in a wheelchair.  (Defs.' Mot. Summ. J. Ex. E, at 1:38-6:20).  Poynter was transported to a Tennessee hospital for care and claims to have suffered a brain injury as a result of the attack.  (Fernandez Dep. 64:22-65:5, Jan. 18, 2023, DN 100-2; Franklin Dep. vol. 1, 20:7-8, Nov. 15, 2023, DN 99-1).

Poynter's guardian, Anita Fernandez ("Plaintiff"), filed this action against Defendants Aaron Bennett ("Bennett"), in his official capacity, and Barren County, Kentucky, (jointly "Defendants"), alleging *Monell* claims under 42 U.S.C. § 1983 for violations of Poynter's constitutional rights under the Eighth and Fourteenth Amendments.  (Am. Compl. ¶¶ 1, 5-6, 36-41, DN 32).  Following discovery, Defendants moved for summary judgment on Plaintiff's claims against them.  (Defs.' Mot. Summ. J., DN 95).  Defendants have also moved to exclude expert testimony and opinions of Laura Lampton ("Lampton") and Dr. Robbi Franklin ("Dr. Franklin").

---

[3] These events were shown in the surveillance video (DN 96) from the BCDC.  There is no audio component to this footage.

(Defs.' Mot. Exclude, DN 98 [hereinafter Defs.' Mot. Exclude Lampton]; Defs.' Mot. Exclude, DN 99 [Defs.' Mot. Exclude Dr. Franklin]).

## II.    **JURISDICTION**

This Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331.

## III.    **DISCUSSION**

### A.    **Defendant's Motion for Summary Judgment**

Defendants contend that they are entitled to summary judgment on Plaintiff's claims. (Defs.' Mem. Supp. Mot. Summ. J. 5-15, DN 95-1).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A] party moving for summary judgment may satisfy its burden [of showing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).  Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-moving party's claim. *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  While the Court must view the evidence in a light most favorable to the

non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] [] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### 1.   *Official Capacity Claim*

Poynter has sued Bennett in his official capacity only. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978); *see also Commonwealth v. Harris*, 59 S.W.3d 896, 899 (Ky. 2001) (recognizing that official capacity claims against a jailer are actually claims against the county). In this instance, the official capacity claim against Bennett is really against Barren County, which is also a party to this action. In Poynter's response, she confirms that her claims are against Barren County. (Pl.'s Resp. Defs.' Mot. Summ. J. 13, DN 103 (citation omitted)). Accordingly, the claims against Bennett in his official capacity are dismissed as duplicative. *See Thorpe ex rel. D.T. v. Breathitt Cnty. Bd. of Educ.*, 932 F. Supp. 2d 799, 802 (E.D. Ky. Mar. 22, 2013) (citing *Doe v. Claiborne Cnty. ex rel. Claiborne Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996)).

### 2.   *Nature of Plaintiff's* **Monell** *Claim*

In part, the Amended Complaint asserts *Monell* claims against Barren County relating to understaffing, improper classification of inmates, and failing to provide a list of other inmates at booking. (Am. Compl. ¶¶ 36-41). In her response, Plaintiff concedes that she cannot prevail on her Section 1983 claims to the extent they are based on understaffing or failing to provide a list of inmates at booking. (Pl.'s Resp. Def.'s Mot. Summ. J. 21 n.20). Summary judgment is therefore granted for Defendants on this cause of action.

5

As to the improper classification, Plaintiff concedes the existence of an adequate written policy.  (Pl.'s Resp. Defs.' Mot. Summ. J. 5 n.2; *see also* Eiser Dep. 29:19-30:3, Sept. 19, 2023, DN 95-7 (opining that the BCDC's classification policy was adequate if it had been followed)).  Accordingly, to the extent that this *Monell* claim is premised on the absence of an adequate policy, Defendants are also entitled to summary judgment.

The parties dispute the nature of the remaining claim asserted in the Amended Complaint.  In their reply, Defendants contend that in her response to the summary judgment motion Plaintiff is asserting a new theory of *Monell* liability based on custom and that such a claim was not pleaded in the Amended Complaint.  (Defs.' Reply Mot. Summ. J. 1-5, DN 108).  In particular, Plaintiff asserts that "the County's custom was to deviate entirely and consistently from its written policy, such that it routinely housed inmates together in minimum security general population, without regard to institutional history and without assigning them a security classification.  That custom is what imposes municipal liability."  (Pl.'s Resp. Def.'s Mot. Summ. J. 5 n.2).

While it is true that the Amended Complaint never uses the word "custom," it repeatedly uses the word "practice" to describe the alleged unconstitutional conduct of Defendants.  (*See* Am. Compl. ¶¶ 15, 19, 32-33, 37, 40).  As the Sixth Circuit recently stated, "[a] plaintiff may rely on . . . a 'widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom.'"  *King v. City of Columbus*, No. 23-3818, 2024 WL 3738581, at *9 (6th Cir. Aug. 9, 2024) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)); *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) ("[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."  (citing *Monell*, 436 U.S. at 690-

91)).  Thus, Defendants' contention that Plaintiff is belatedly asserting a new theory of *Monell* liability based on custom lacks merit.

### 3. *Constitutional Violation*

To impose *Monell* liability on Barren County, Plaintiff must prove that an underlying constitutional injury occurred.  *See Stucker v. Louisville Metro Gov't*, No. 23-5214, 2024 WL 2135407, at *5 (6th Cir. May 13, 2024) (citing *Monell*, 436 U.S. at 694).  The Amended Complaint purports to assert violations of both the Eighth and Fourteenth Amendments.  (Am. Compl. ¶¶ 36-41).

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well[-]being."  *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).  Those duties include "tak[ing] reasonable measures to guarantee the safety of the inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)); *see also Campbell v. Riahi*, 109 F.4th 854, 860 (6th Cir. 2024) ("The Fourteenth Amendment requires (among other things) that jail officials take reasonable measures 'to protect pretrial detainees from harm.'"  (quoting *Lawler ex rel. Lawler v. Hardeman Cnty.*, 93 F.4th 919, 926 (6th Cir. 2024))).  While the Eighth Amendment does not apply to pretrial detainees, the Fourteenth Amendment's due process clause provides protections "at least as" extensive as those required by the Eighth Amendment.  *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

Plaintiff's contention is that BCDC staff breached its duty to protect Poynter by failing to classify inmates.  (Pl.'s Resp. Defs.' Mot. Summ. J. 6).  "[N]ot every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials."

*Varmado-El v. Martin*, 52 F. App'x 764, 765 (6th Cir. 2002) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 834).  "Under § 1983, a pretrial detainee can seek relief against officers who are deliberately indifferent to a significant risk of harm."  *Reece v. Carey*, No. 22-5275, 2023 WL 3003191, at *4 (6th Cir. Apr. 19, 2023) (citing *Stein v. Gunkel*, 43 F.4th 633, 639 (6th Cir. 2022)).  To prove a failure-to-protect claim, the Sixth Circuit applies a four-prong test:

> [A]n officer violates the Fourteenth Amendment when (1) he acts intentionally 'with respect to the conditions under which the plaintiff was confined,' (2) those conditions 'put the plaintiff at substantial risk' of harm, (3) he does not take reasonable steps to abate that risk, and (4) by failing to do so he actually causes the plaintiff's injuries."

*Reece v. Carey*, No. 22-5275, 2023 WL 3003191, at *4 (6th Cir. Apr. 19, 2023) (quoting *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 945 (6th Cir. 2022)).  In conducting this analysis, the Court must assess the individual actions of the BCDC staff member involved with the alleged violation.[4]  *See Stein*, 43 F.4th at 640 (citing *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022)).

### a.    Intentional Act

While Plaintiff has not identified in her response the specific employee who failed to properly classify Poynter, Burris is listed as Poynter's booking officer and would have been responsible for classifying Poynter during the booking process.[5]  (Bennett Dep. 21:8-11, 22:11-25:18; Boston Dep. 24:16-19).  Any failure by Burris to follow the BCDC classification policy by itself, however, is insufficient to prove that he intentionally exposed Poynter to harm.  *See Griffith*

---

[4] In *Reece*, the Sixth Circuit only analyzed whether the booking officer failed to properly classify the plaintiff, not his attackers.  *See Reece*, 2023 WL 3003191, at *4-5.  To the extent that the classification of Guess and Wix by their booking officers should be analyzed here, the relevant FARs identifying their booking officers are not in the record, and Plaintiff has not identified these BCDC staff members.

[5] If Burris' deposition was taken, it is not in the record.

*v. Franklin Cnty.*, 975 F.3d 554, 579 (6th Cir. 2020) ("[T]he failure to follow internal policies, without more, [does not] constitute deliberate indifference . . . ." (second alteration in original) (citation omitted)); *Hyman v. Lewis*, 27 F.4th 1233, 1238 (6th Cir. 2022) ("Lewis no doubt violated the jail's operating procedures.  But 'failure to follow internal policies, without more,' does not equal deliberate indifference. . . . Lewis's violation of the operating procedures does not rise above negligence to become a constitutional violation under the Fourteenth Amendment." (internal citation omitted) (citing *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021))).  In fact, Plaintiff's expert has acknowledged that Poynter was properly housed in the general population when he was placed in Cell 524.  (Eiser Dep. 69:9-15).  Plaintiff has therefore failed to show that Burris intentionally failed to classify Poynter properly.

### b.    Substantial Risk of Harm

Even if Plaintiff could prove the first prong, there is an absence of proof as to a substantial risk of harm.  To satisfy this element, Plaintiff had to present evidence that Poynter "was personally at 'substantial risk of assault.'"  *Davis v. Chorak*, No. 22-1839, 2023 WL 2487339, at *3 (6th Cir. Mar. 14, 2023) (citing *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 729 (6th Cir. 2022)).

Plaintiff asserts that the BCDC's failure to follow its own policy in classifying inmates put Poynter at a risk of harm.  (Pl.'s Resp. Defs.' Mot. Summ. J. 16-21).  The fact that Guess and Wix had fought with other inmates in the past and posed a general security risk is not enough to show substantial risk.  *See Davis*, 2023 WL 2487339, at *3 (citation omitted); *see also Lewis v. McClennan*, 7 F. App'x 373, 375 (6th Cir. 2001) ("Lewis has not alleged any specific facts which would show that he was in danger of being assaulted by the other inmates.  At most, Lewis has alleged a hypothetical risk of danger to his safety prior to the attack.").  Poynter testified that he was not afraid of Wix and denied any previous altercation with him.  (Poynter Dep. 8:15-20).

Poynter did not even know Guess. (Poynter Dep. 8:25-9:1). There is no evidence of prior animosity between Poynter and either Guess or Wix, and during booking, Poynter neither raised any concern about Guess or Wix, nor were those inmates on Poynter's keep-away list when Poynter was placed in Cell 524. (Pl.'s Mot. Summ. J. Ex. C, at 1; Bennett Dep. 101:11-13). Likewise, Plaintiff provides no evidence or argument that the nature of Poynter's criminal charge put him at a particular risk of co-inmate violence. Thus, Plaintiff cannot prove this element of the alleged constitutional violation.

### c.  Failure to Take Reasonable Steps to Abate Risk

For the third prong, Plaintiff must show that Burris failed to take reasonable steps to abate the known risk. Negligence in failing to properly classify an inmate, however, is insufficient because "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Stein* 43 F.4th at 639-40 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015)). Instead, Plaintiff must prove that Burris "acted with reckless disregard in the face of an unjustifiably high risk of harm." *Id.* at 640 (internal quotation marks omitted) (quoting *Westmoreland*, 29 F.4th at 730).

Plaintiff's expert witness, Jeff Eiser ("Eiser"), concedes that Poynter was properly classified for placement in a general population cell. (Eiser Dep. 69:9-15). The JailTracker records do not reflect that Guess or Wix was on the keep-away list for Poynter prior to the attack, and Poynter's intake form does not show that he requested to be separated from any other inmate. (Bennett Dep. 101:11-13; Sweeney Dep. Ex. 4, at 1-5, DN 101-3; Defs.' Mot. Summ. J. Ex. C, at 1). Therefore, Plaintiff has failed to prove that reasonable steps were not taken to abate a known risk to Poynter.

### d.    Causation

Finally, Plaintiff would have to show causation.  *See Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020) ("Like a tort plaintiff, a § 1983 plaintiff must establish both causation in fact and proximate causation." (citation omitted)).  Because Plaintiff cannot prove the other prongs, it is unnecessary to whether she has presented sufficient evidence to establish causation, consistent with the analysis in *Stein*.  Accordingly, Defendants are entitled to summary judgment as matter of law based on Plaintiff's failure to prove an underlying constitutional violation for failure to classify Poynter.

### 4.    Monell *Claim*

Plaintiff is seeking to impose *Monell* liability against Barren County based upon a custom of inaction in failing to classify inmates that created a risk of inmate-on-inmate violence.  "[U]nder § 1983, local governments are responsible only for 'their own illegal acts.'  They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal citation omitted) (citing *Monell*, 436 U.S. at 691; *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Brown*, 520 U.S. at 403).  "If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Westmoreland*, 29 F.4th at 731 (citation omitted).  As stated above, Plaintiff has failed to prove unconstitutional conduct by any BCDC staff member upon which *Monell* liability could be based, and Barren County is entitled to summary judgment on this claim.

Even if the Court were to assume that the *Monell* claim can proceed, the custom of inaction—failing to properly classify inmates—must be "so widespread as to have the force of law." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 319 (6th Cir. 2023) (quoting *Brown*, 520 U.S. at 404).  As the Sixth Circuit has noted, "[a] *Monell* claim that survives summary judgment is exceedingly rare, and rightly so.  'In virtually every instance where a person has had his or her

11

constitutional rights violated by a [municipal] employee, a § 1983 plaintiff will be able to point to something the [municipality] "could have done" to prevent the unfortunate incident.'" *Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 542 (6th Cir. 2018) (quoting *Harris*, 489 U.S. at 392). A plaintiff cannot rely on "simple or even heightened negligence" to provide a *Monell* claim. *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 2005) (citing *Brown*, 520 U.S. at 407). To prevail on a *Monell* claim based on a custom of inaction, a plaintiff must prove:

> "(1) the existence of a clear and persistent pattern of" unconstitutional conduct; (2) "notice or constructive notice" on the part of the municipality; (3) the municipality's "tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction"; and (4) "that the [municipality's] custom was the 'moving force' or direct causal link in the constitutional deprivation."

*Franklin v. Franklin Cnty.*, 115 F.4th 461, 472 (6th Cir. 2024) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

### a.    Pattern

First, Plaintiff must prove a clear and consistent pattern of unconstitutional conduct. *See Franklin*, 115 F.4th at 472 (citation omitted). As discussed above, because Plaintiff has not proved an underlying constitutional violation by a BCDC staff member, the *Monell* claim fails. *See Westmoreland*, 29 F.4th at 731 ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." (quoting *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001))).

Even if the Court were to assume that unconstitutional conduct had been established, Plaintiff must still show the requisite pattern. In this case, Plaintiff argues:

> Barren County had an adequate written policy, but failed to follow it. Nor was that failure a one-time lapse. On the contrary, the County's custom was to deviate entirely and consistently from its written policy, such that it routinely housed inmates together in minimum security general population, without regard to institutional history and without assigning them a security classification.

(Pl.'s Resp. Defs.' Mot. Summ. J. 5 n.2).  Plaintiff retained Eiser to testify as a jail operations expert in this matter.  (Eiser Report, DN 102-4).  In his report, Eiser identifies "[a] dangerous de-facto policy and practice of Jailer Aaron Bennett and his staff violating their own written policies and procedures and state mandated requirements in the area of risk assessment, classification for all newly arrived detainees, including Mr. Poynter, during his December 25-28, 2000[,] incarceration."  (Eiser Report 9, DN 102-4).

As the Sixth Circuit explained in *Franklin v. Franklin County*:

> "[O]ur circuit does not appear to have explained how 'similar' past incidents must be to constitute a 'pattern of similar constitutional violations. "  But this court's unpublished opinion in *Berry v. Delaware Cnty. Sheriff's Off.*, 796 F. App'x 857, 862 (6th Cir. 2019), provides persuasive guidance in addressing "similarity."  The *Berry* court held that the similarity between a plaintiff's claim and an alleged pattern of constitutional violations "must be particularized."  What that means in practical terms is that "the prior examples of wrongdoing must violate the same constitutional rights [as the plaintiff's] and violate them in the same way."  The alleged pattern of similar unconstitutional conduct, however, need not be identical, or even "almost identical" to that which a plaintiff alleges occurred in her case.

*Franklin*, 115 F.4th at 472-73 (internal citations omitted) (citation omitted).  In addressing the evidence required to support a pattern in *Franklin*, the Sixth Court explained:

> Franklin would need to show that there was a pattern of [] [constitutional] violations at the Jail (i.e., the same constitutional right that Price violated), that involved some sort of sexual assault on inmates (i.e., the right was violated in the same way as Franklin's was).  *See Berry*, 796 F. App'x at 862. . . . Given the fact-specific nature of allegations concerning patterns of similar constitutional violations, this inquiry is necessarily context-dependent.

*Id.* at 473.

In this instance, Plaintiff must show that there was a pattern of failing to classify inmates which led to inmate-on-inmate violence.  As part of his review, Eiser reviewed numerous documents, including:  (i) the BCDC inmate file for Poynter; (ii) the BCDC inmate records for Guess and Wix; and (iii) the BCDC admissions records and alerts for ten other inmates.  (Eiser

Report 4-5).  In his report, Eiser states that Guess had at least 20 prior incidents of violence and Wix had at least 10 prior incidents of violence while incarcerated at the BCDC.  (Eiser Report 6-7).  Several of the incidents occurred in 2018, 2019, and 2020.  (Eiser Report 6-7).  Eiser opined that "Poynter was housed with, and then assaulted and severely beaten by two other inmates, who had never been classified and housed in accordance with BCDC written policies and procedures." (Eiser Rep. 19).

As the Sixth Circuit has noted, "an alleged pattern of constitutional violations 'must be particularized,'" which means that "the prior examples of wrongdoing must violate the same constitutional rights [as the plaintiff's] and violate them in the same way."  *Franklin*, 115 F.4th at 472 (6th Cir. 2024) (alteration in original) (quoting *Berry*, 796 F. App'x at 862).  While Plaintiff's response does not discuss the particulars of those prior incidents involving Guess and Wix, she does cite to deposition testimony regarding the incident reports, and those reports are in the record. (Pl.'s Resp. Defs.' Mot. Summ. J. 9).  The incidents identified were:

- Feb. 6, 2007 – Guess resisted being handcuffed by BCDC staff

- May 19, 2008 – Guess and three other inmates were engaged in a physical altercation

- Jan. 23, 2010 – during booking, Guess was sprayed with pepper spray after being verbally abusive and noncompliant

- Sept. 28, 2010 – Wix was restrained after being aggressive and yelling at BCDC staff

- Dec. 10, 2010 – an inmate was assaulted by an unidentified assailant, and Wix was one of the inmates in the cell

- Nov. 30, 2011 – Guess asked to be removed from his cell due to a disagreement with another inmate

- Dec. 26, 2012 – After Guess and another inmate were caught smoking, Guess assaulted another inmate

- Dec. 27, 2013 – Wix and another inmate assaulted a fellow inmate

14

- Feb. 14, 2014 – Wix assaulted another inmate for being a snitch

- July 19, 2017 – Wix and another inmate were engaged in a physical altercation

- Aug. 26, 2018 – Guess and two other inmates were involved in a physical altercation

- Oct. 1, 2018 – two notes were found apparently written by Guess in which he requested the help of other inmates to put a fellow inmate "on the door"

- May 4, 2019 – Guess assaulted another inmate

- May 11, 2019 – Guess and Wix assaulted fellow inmates following a verbal disagreement

- July 5, 2019 – Guess and another inmate were in a verbal disagreement

- Sept. 3, 2019 – Guess and another inmate were engaged in a physical altercation

- Sept. 4, 2019 – Guess tested positive for methamphetamine and amphetamines

- Sept. 11, 2019 – Guess and another inmate were in a verbal disagreement

- Oct. 7, 2019 – Guess and another inmate were engaged in a physical altercation

- Nov. 3, 2019 – Guess was restrained after being aggressive, yelling at BCDC staff, and continuing to act out

- Jan. 23, 2020 – Guess assaulted another inmate

- Feb. 15, 2020 – Wix and another inmate were engaged in a physical altercation

- July 7, 2020 – Guess wrote a note threatening another inmate

- Oct. 14, 2020 – Wix and another inmate were engaged in a physical altercation

- Dec. 10, 2020 – Guess was acting erratically and showed signs of drug use

- Dec. 19, 2020 – Guess was involved in a verbal altercation with another inmate

(Sweeney Dep. 42:14-83:24, Oct. 16, 2023, DN 100-4; Sweeney Dep. Ex. 3, at 1-34, DN 101-2). Plaintiff, however, has not identified any evidence in the record to show that any other incidents of inmate-on-inmate violence had occurred in similar situations—i.e., because Guess or Wix had not been properly classified, or that the Guess or Wix should not have been housed with the other

15

inmate if properly classified.  In the absence of any evidence that those prior incidents occurred due to a misclassification of inmates, those events are not evidence of a pattern of similar constitutional violations, and Plaintiff has failed to prove this element of her claim.

### b.     Actual or Constructive Notice

In addition, Plaintiff must prove that Barren County had actual or constructive notice of the clear and persistent pattern of unconstitutional conduct.  *See Franklin*, 115 F.4th at 472 (citation omitted).  As the Sixth Circuit has noted, it has "never found notice of a pattern of misconduct (or the pattern itself) solely from the mistreatment of the plaintiff.  To do so risks 'collapsing . . . the municipal liability standard into a simple *respondeat superior* standard.'"  *Nouri v. Cnty v. of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015) (quoting *Thomas*, 398 F.3d at 432-33).

As with the pattern of unconstitutional conduct, Plaintiff has not pointed to evidence in the record that the County had actual or constructive notice of any unconstitutional conduct.  The fact that Guess and Wix had been in fights with other inmates alone does not show that Barren County had actual or constructive notice that BCDC staff was failing to classify inmates, or that there was any connection between failures to classify inmates and incidents of inmate-on-inmate violence at the BCDC.  In the absence of such proof, the *Monell* claim also fails on this element.  *See D'Ambrosio v. Marino*, 747 F.3d 378, 388 (6th Cir. 2014) ("Until the county had notice of persistent misconduct, it did not have 'the opportunity to conform to constitutional dictates,' nor could its inaction have caused the deprivation of D'Ambrosio's constitutional rights.  The county cannot have tacitly approved an unconstitutional policy of which it was unaware."  (internal citation omitted) (citation omitted)); *see also Harris*, 489 U.S. at 394 (Brennan, J., concurring) ("Without some form of notice to the city, and the opportunity to conform to constitutional dictates

both what it does and what it chooses not to do, the failure to train theory of liability could completely engulf *Monell*, imposing liability without regard to fault.").

### c.    Deliberate Indifference

Plaintiff must also prove deliberate indifference by Barren County. *See Franklin*, 115 F.4th at 472 (citation omitted). "[D]eliberate indifference 'does not mean a collection of sloppy, or even reckless oversights; it means evidence showing an obvious, deliberate indifference' to the alleged violation." *Thomas*, 398 F.3d at 433 (citations omitted).

In *Franklin v. Franklin County*, the Sixth Circuit considered the dismissal of a Section 1983 action where a jail failed to follow its own policies, and a female inmate was sexually assaulted. *See Franklin*, 115 F.4th at 467-68. In addressing whether the plaintiff could prove deliberate indifference by the county, the Sixth Circuit stated:

> Franklin's argument that the County is responsible for her assault because it failed to "implement[] all of [the] requirements [of the Prison Rape Elimination Act ("PREA"), especially those geared toward prevention," is unavailing. Even if we accepted Franklin's argument that the Jail's policies concerning PREA were somehow suboptimal, "the fact that alternative procedures might have better addressed a prisoner's particular needs does not show that the County was deliberately indifferent." Indeed, this is not a case in which there is a "total lack of any County policies" governing the prevention of sexual assault. The Jail's policies explicitly prohibit sexual contact between inmates and staff, require information to be given to each inmate about preventing and reporting such incidents, subject all employees who fail to comply with the Jail's PREA policy to disciplinary action or termination, and require all employees who witness or have knowledge of any sexual activity to report it. We therefore conclude that the County is not liable on a municipal-liability theory of inaction.

*Id.* at 474 (first alteration in original) (internal citations omitted).

In this instance, the parties agree that BCDC policy required the classification of inmates. (Defs. Mem. Supp. Mot. Summ. J. 11-12; Pl.'s Resp. Defs.' Mot. Summ. J. 5 n.2). In relevant part, that policy provides:

2)    The inmate classification system shall provide for separation of the following categories of prisoners:
   a.    Male and female inmates, except in diversion/holding areas
   b.    Mental inquest detainee and other inmates
   c.    Mentally ill or mentally retarded inmates and other inmates
   d.    Chemically incapacitated inmate and other inmates
   e.    Evidence of mental or physical handicap
   f.    Evidence of suicidal tendencies
   g.    Potential threat of escape
   h.    Community custody inmate including work release and work program.
   i.    An inmate with a tendency to harm others, be harmed by others, or requiring administrative segregation and other inmates; and
   j.    An inmate with a communicable disease and other inmates.
3)    The criteria to be used in the classification other inmate categories shall be as follows:
   a.    Seriousness of current offense
   b.    Institutional behavioral history
   c.    Special needs
   d.    Known criminal history
4)    Inmates shall be assigned a classification level in the order listed below:
   a.    Maximum security
   b.    Medium security
   c.    Minimum security
   d.    Protective custody/administrative segregation

(Sweeney Dep. Ex. 1, at 1).  Plaintiff and her expert have conceded that the policy was adequate.

(Pl.'s Resp. Defs.' Mot. Summ. J. 5 n.2; Eiser Dep. 29:19-30:3).  The record also reflects that the new employee training included a review of BCDC policies and procedures, and jail employees subsequently received training on the booking process before they were allowed to book inmates. (Bennett Dep. 37:6-11, 48:10-14, 52:4-18).  Thus, consistent with the Sixth Circuit's reasoning in *Franklin*, the existence of an adequate classification policy and relevant training undermines any assertion that there was deliberate indifference upon which *Monell* liability could be imposed upon Barren County.

#### d.      Moving Force

Finally, Plaintiff must prove causation.  *See Franklin*, 115 F.4th at 472 (citation omitted).  Because Plaintiff cannot prove the other elements of her *Monell* claim, it is unnecessary to address this element, consistent with the decision in *Franklin*.

For these reasons, Plaintiff has failed to prove a *Monell* claim relating to the BCDC's inaction in failing classify inmates.  Barren County is entitled to summary judgment on this claim.

### 5.      Cases Cited by Plaintiff

Relying on the Sixth Circuit's decision in *Brawner v. Scott County*, Plaintiff asserts that she can prove a *Monell* claim.  (Pl.'s Resp. Defs.' Mot. Summ. J. 14-15).  Factually, *Brawner* is distinguishable in that it involved a Section 1983 claim arising from an inadequate medical care asserted by a pretrial detainee rather than a claim for failure to protect.  *See Brawner*, 14 F.4th at 590.  Plaintiff's reliance on *Brawner* is also misplaced in light of the Sixth Circuit's more recent decision in *Westmoreland v. Butler County*, which articulated the elements of a pretrial detainee's failure-to-protect claim under Section 1983.  *See Westmoreland*, 29 F.4th at 728-29.  These elements conform with the Supreme Court's decision in *Kingsley v. Hendrickson* and were applied above in analyzing whether Plaintiff could prove unconstitutional conduct by Burris.  *See id*.  As the Sixth Circuit explained in *Westmoreland*:

> The third element of a pretrial detainee's failure-to-protect claim against an individual officer is that the defendant did not take reasonable available measures to abate the substantial risk of serious harm, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved and the obvious consequences of the defendant's conduct.  This prong incorporates *Kingsley*'s holding that "the relevant standard is objective not subjective."  A pretrial detainee need not prove subjective elements about an officer's actual awareness of the level of risk, but he must prove the officer was more than merely negligent; the officer must have acted with "reckless disregard" in the face of "an unjustifiably high risk of harm."

*Id.* at 730 (internal citation omitted) (citation omitted).

While it was true that the *Monell* claim was allowed to proceed in *Brawner* even though the individual capacity claims were dismissed and that a custom can give rise to municipal liability, the Sixth Circuit held that the plaintiff had presented jury questions as to whether a nurse had acted recklessly in violating the plaintiff's constitutional rights to medical care. *See Brawner*, 14 F.4th at 597-98 ("Brawner presented evidence from which a reasonable jury could find that [the] [nurse] violated Brawner's constitutional rights and that this violation was the result of the County's policies."). In contrast, this case involves a failure-to-protect claim, not inadequate medical care, and as discussed above, there is a lack of evidence to create a jury issue here to defeat Defendants' motion.

Plaintiff also relies on *Rager ex rel. GC v. McMinn County*, No. 21-5987, 2023 WL 4927252 (6th Cir. 2023). (Pl.'s Resp. Defs.' Mot. Summ. J. 19-20). While *Rager* did involve an inmate with a prior history of violence, the Sixth Circuit held there that the individual officers were entitled to qualified immunity on the failure-to-protect and failure-to-train claims, but the Sixth Circuit lacked jurisdiction to conduct an interlocutory review the trial court's denial of summary judgment on the *Monell* claim. *See Rager*, 2023 WL 4927252, at *2-4. Thus, the holdings in *Rager* are inapplicable here.

### B.     Defendant's Motions to Exclude

Defendants have moved to exclude two expert witnesses retained by Plaintiff—Lampton who is a life care planner and Dr. Franklin who was Poynter's treating neurosurgeon. (Defs.' Mot. Exclude Lampton 1; Defs.' Mot. Exclude Dr. Franklin 1-2). Because Defendants are entitled to summary judgment as a matter of law on Plaintiff's *Monell* claims, and it is unnecessary to consider the testimony of these experts, these motions are denied as moot.

IV.     **CONCLUSION**

For the reasons outlined above, **IT IS HEREBY ORDERED** as follows:

1.     Defendants' Motion for Summary Judgment (DN 95) is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE**.

2.     Defendants' Motions to Exclude (DN 98, 99) are **DENIED AS MOOT**.

3.     The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

February 25, 2025

cc:     counsel of record

21